UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WARREN E. BELL,<br><br>    Plaintiff,<br><br> v.<br><br>DAVID OLSON, et al.,<br><br>    Defendants. | CASE NO. C21-781-JCC-SKV<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff Warren Bell proceeds pro se in this removed civil matter. He brings claims under 42 U.S.C. § 1983 and under state law associated with his arrest, the impoundment of his vehicle, and his imprisonment and medical care at Snohomish County Jail. Dkt. 1-2. He named as Defendants Washington State Patrol Officer David Olson, Snohomish County Jail nurse Autumn Kostelecky ("Nurse Kostelecky"), Snohomish County Jail, and Snohomish County Risk Management. Recently, the Court dismissed the claims against Snohomish County Jail and Snohomish County Risk Management and as to RCW 4.96 et seq., Dkt. 48, and denied Plaintiff's motion to amend through the addition of claims against Snohomish County and a Snohomish County Deputy Prosecuting Attorney, Dkt. 46.

Now pending before the Court is Defendant Kostelecky's Motion for Summary Judgment on Plaintiff's Claims. Dkt. 28. Plaintiff did not submit an opposition to this motion. *See* Dkt. 33. The Court, having considered the pending motion, documents filed in support, and the remainder of the record, finds the motion for summary judgment should be GRANTED and Plaintiff's claims against Nurse Kostelecky DISMISSED.

BACKGROUND

On January 20, 2020, Officer Olson arrested Plaintiff on suspicion of a moving violation for driving without a license, driving without an ignition interlock device, and driving without insurance. Dkt. 1-2, ¶1.1; Dkt. 30, Ex. A. Officer Olson brought Plaintiff to Snohomish County Jail for booking. Dkt. 1-2, ¶1.2; Dkt. 30, Ex. A.

Nurse Kostelecky evaluated Plaintiff upon his arrival at the jail. Dkt. 29, ¶¶2-3. In a "Fit for Jail" form, she documented Plaintiff's reported medical history of high blood pressure, chest pain, seizures triggered by lights and stress, chronic left shoulder pain, and migraines, and his prescription medications as including Flomax, Metoprolol, and Tegratol. *Id.*, Exs. A & B. She also took his vital signs, including a blood pressure reading of "165/97" and a pulse of 111, but did not observe any medical problems and noted Plaintiff's denial of all other medical screening questions. *Id*. Nurse Kostelecky placed Plaintiff on "lower lower for safety" and initiated a prescription medication verification process with his prescribing medical facility. *Id*.

Nurse Kostelecky attests that, based on her medical knowledge and Plaintiff's presentation, she did not believe Plaintiff's prior medical problems or his "contemporaneous vitals warranted any medical response beyond the standard procedure of initiating the process of verifying [his] medications with his pharmacy." *Id.*, ¶3. She describes the prescription verification process as "not generally an exceptionally fast process" and states it is not

uncommon for an inmate to be released prior to completion of the process, especially when the inmate stays in the jail for less than forty-eight hours. *Id*., ¶4. Also, after performing the intake evaluation, Nurse Kostelecky had no further encounters with Plaintiff. *Id*., ¶3 & Ex. B.

Plaintiff saw two other medical providers on the day after his arrest and booking. On the morning of January 1, 2021, he reported "chest pain since last night consistent and hard time breathing" to Nurse Hussein Remtulla. *Id*., Ex. B. The nurse conducted an examination, noting a blood pressure reading of "165/87" and a pulse of 80, and instructed Plaintiff to "try to relax and be calm, do breathing exercise." *Id*. Plaintiff was worried because he had not taken his medications. The nurse noted a medication review was in place, added a task for review of Plaintiff's blood pressure, and gave a one-time order for Tylenol and Tums. Nurse Remtulla also noted that, after advising Plaintiff he was going to court, Plaintiff was relieved, walked without difficulty to his cell, and was left in stable condition. Early that evening, Plaintiff saw Nurse Tina Hagerty, who found Plaintiff alert, oriented, complaining of "some chest pain", but appearing to be in no distress, with a blood pressure of "168/98" and a pulse of 72. *Id*. Plaintiff anticipated his release that day after going to court and expressed interest in a release to the hospital, and the nurse observed that he appeared to be "somewhat anxious which may be contributing to his symptoms." *Id*. Nurse Hagerty gave Plaintiff Tylenol for pain, ordered ongoing Tylenol, and noted his medications were pending verification.

The parties do not specify the date or time of Plaintiff's release. It is, however, undisputed that the charges against him were dismissed and he was released from the jail.

## DISCUSSION

A.  Summary Judgment Standard

Summary judgment is appropriate if the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  It can carry that burden by producing affirmative evidence negating an essential element of the nonmovant's case or by establishing the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the nonmoving party.  *Id*. at 255; *Matsushita Elec. Indus. Co.*, 475 U.S. at 87.  However, summary judgment may not be defeated with allegations in the complaint, "unsupported conjecture[,] or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

B.     Nurse Kostelecky's Motion for Summary Judgment

Plaintiff alleges he was seriously ill and in need of immediate medical care and hospitalization, that Nurse Kostelecky ignored his serious conditions and denied him his prescribed medications, and that he suffered a "near death, Heart-Attack, or a Severe and Painful

Stroke," with his life in peril. Dkt. 1-2, ¶¶1.3-1.5, 5.1-5.6, 7.2. He contends Nurse Kostelecky committed "willful neglect" in violation of state law and violated his constitutional rights through her deliberate indifference. *Id*., ¶¶5.7, 7.2-7.3. Nurse Kostelecky seeks summary judgment on these claims.

       1.      <u>Section 1983 Claim</u>:

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Plaintiff here alleges the violation of his constitutional rights during his confinement as a pretrial detainee. "[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

Specifically, a pretrial detainee alleging denial of adequate medical care must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125. Satisfaction of the third element requires a showing that the defendant's actions were "'objectively unreasonable,'" a determination necessarily resting on the facts and circumstances of the particular case. *Id*. (quoted sources omitted). A "'mere lack of due care'" does not suffice to establish a violation of the Fourteenth Amendment. *Id*. A plaintiff must show "'more than negligence but less than subjective intent – something akin to reckless disregard.'" *Id*.

REPORT AND RECOMMENDATION - 5

1    A constitutional violation may be found where an official denies, delays, or intentionally
2 interferes with needed medical treatment, or chooses "a course of treatment that is 'medically
3 unacceptable under the circumstances.'" *Sandoval*, 985 F.3d at 679 (citing and quoting *Jett v.
4 Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), and *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir.
5 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en
6 banc)). For example, "a prison official who is aware that an inmate is suffering from a serious
7 acute medical condition violates the Constitution when he stands idly by rather than responding
8 with reasonable diligence to treat the condition." *Id*. at 670, 679-80 (finding a reasonable nurse
9 who was told a pretrial detainee was "shaking, tired, and disoriented", and who had been
10 specifically directed to conduct a more thorough evaluation, would have understood the inmate,
11 who later died of a methamphetamine overdose, faced a substantial risk of suffering serious
12 harm: "Sweating and being so disoriented that officers observe and comment about it are not
13 everyday conditions."; also finding actions akin to reckless disregard where the nurse did no
14 more than administer a quick blood test and ignored the inmate for the remaining six hours of the
15 nurse's shift).
16    In this case, the evidence shows Nurse Kostelecky saw Plaintiff upon his admission to the
17 jail, documented his medical history and vital signs, including his heightened blood pressure and
18 fast heartbeat, ordered that he be placed on a lower cell and lower bunk for his safety, and
19 initiated the process to verify the prescription medications he uses to treat his medical conditions.
20 *See* Dkt. 29, Exs. A & B. She had no further interactions with Plaintiff, while two other medical
21 providers saw Plaintiff on the following day. The other providers checked Plaintiff's vital signs,
22 including continued high blood pressure but lower heartrate, provided him over-the-counter
23 medications, and confirmed the prescription medication process remained pending. *Id*.
24

Consistent with Nurse Kostelecky's notation of no observed medical problem, Nurse Remtulla found Plaintiff worried but in stable condition, while Nurse Hagerty depicted Plaintiff as "somewhat anxious" but appearing "in no distress." *Id*. These facts do not support Plaintiff's allegation that Nurse Kostelecky either ignored Plaintiff's serious medical conditions or denied him his prescribed medications.

Nor do the facts support an allegation that the actions or inaction of Nurse Kostelecky put Plaintiff at risk of suffering serious harm, that she failed to take reasonable available measures to abate that risk, or that she caused him injury. Nurse Kostelecky did not believe Plaintiff's medical history or vital signs warranted any medical response beyond verifying his prescription medications. *Id*., ¶3. Plaintiff did not submit a response to the motion for summary judgment. He alleges he suffered a "near death, Heart-Attack, or a Severe and Painful Stroke" and that his life was at risk, Dkt. 1-2, ¶5.3, but does not, in his complaint or in any other submission to the Court, identify or provide any evidence supporting these contentions. The complaint does not, for example, describe any medical treatment Plaintiff received following his release. Plaintiff appears to allege he could have suffered a heart attack or stroke during his confinement. This suggestion of a mere possibility of injury does not suffice to support a constitutional violation.

To the extent Plaintiff believes Nurse Kostelecky should have followed a different course of action, this belief is likewise insufficient. An inmate's difference of opinion with a medical provider's methodology or course of treatment does not amount to deliberate indifference. *See, e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Nor would Plaintiff support the existence of a constitutional violation with a showing of medical malpractice or negligence. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a

constitutional violation merely because the victim is a prisoner."); *Gordon*, 888 F.3d at 1124-25 (a pretrial detainee must show more than a lack of due care or negligence).

The Court, in sum, finds an absence of evidence supporting a claim that Nurse Kostelecky's conduct was objectively unreasonable or akin to reckless disregard. Plaintiff's allegations are insufficiently supported and no more than conclusory, and Nurse Kostelecky is entitled to summary judgment on Plaintiff's claims under § 1983.[1]

2. <u>Willful Neglect</u>:

Plaintiff alleges Nurse Kostelecky "committed a willful neglect to perform a duty upon her imposed by law." Dkt. 1-2 at 7. The statute he cites in support of this allegation provides: "Whenever any duty is enjoined by law upon any public officer or other person holding any public trust or employment, their wilful neglect to perform such duty, except where otherwise specially provided for, shall be a misdemeanor." RCW 42.20.100.

The statute cited by Plaintiff in support of his claim, RCW 42.20.100, describes the criminal act of failure to perform a duty by a public officer. Criminal statutes do not, as a general matter, provide an independent civil cause of action. *Kerner v. Seattle Police Dep't*, C18-1737-JCC, 2019 WL 1922925, at *2 (W.D. Wash. Apr. 30, 2019) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). This Court has, moreover, specifically found that RCW 42.20.100 does not provide a private cause of action. *Id.* (citing *Sutton v. Washington State Dep't of Corr.*, C13-5064, 2015 WL 4748233 (E.D. Wash. Aug. 11, 2015) (granting summary judgment because no relief possible), *aff'd sub nom. Sutton v. Warner*, 669 F. App'x 376 (9th

---

[1] Given this conclusion, the Court declines to address the argument that Nurse Kostelecky is entitled to qualified immunity.

Cir. 2016)). Accordingly, to the extent Plaintiff intends to assert a violation of RCW 42.20.100, Nurse Kostelecky is entitled to dismissal of this claim on summary judgment.[2]

Nor does a claim of negligence withstand scrutiny. To support such a claim, a plaintiff must show: (1) the existence of a duty owed to the plaintiff; (2) a breach of that duty; (3) a resulting injury; and (4) a proximate cause between the injury and the breach. *Hutchins v. 1001 Fourth Ave. Assoc.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). *See also Harper v. State*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018) (gross negligence requires that the defendant "*substantially* breached its duty by failing to act with even slight care.") (cleaned up and citations omitted). As described by Defendant, willful negligence sets a higher bar, requiring a showing that a defendant had a duty imposed upon them by law and willfully, i.e., with knowledge and intent, breached that duty.[3]

As a nurse in a county jail, Nurse Kostelecky had a duty to provide competent medical care to Plaintiff. *Hopovac v. State Dep't of Corr.*, 197 Wn. App. 817, 823-24, 391 P.3d 570 (2017). There is, however, an absence of evidence before the Court sufficient to show she

---

[2] Two other statutory provisions cited in the complaint are likewise inapplicable. *See* Dkt. 1-2, ¶1.5 (citing RCW 9A.08.010(4), a provision defining "[w]ilfulness" under the criminal code"), and ¶5.4 (citing RCW 18.130.400, which prohibits an individual from practicing a health care profession where found to have abused a vulnerable adult).

[3] Defendant does not provide any citation to caselaw associated with a claim of "willful negligence" and the precise nature of this or any other negligence claim intended by Plaintiff is not clear. It should be noted that, for a claim of medical negligence, Plaintiff would have to show Defendant "'failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider' in defendant's position, and that failure proximately caused plaintiff's injury." *Watson v. Washington Dep't of Corr.,* C17-5968-BHS-TLF, 2018 WL 7150488, at *8 (W.D. Wash. Nov. 15, 2018) (quoting RCW § 7.70.040; citing *Keck v. Collins*, 184 Wn.2d 358, 371, 357 P.3d 1080 (2015)), *report and recommendation adopted sub nom.*, *Watson v. Washington State Dep't of Corr.*, 2019 WL 399070 (Jan. 31, 2019), *aff'd*, 812 F. App'x 695 (9th Cir. 2020). Also, to defeat summary judgment on a medical negligence or a medical malpractice claim, Plaintiff would have to produce competent medical expert testimony, unless the "medical facts are observable to the lay person." *Id*. at *8-9. In this case, Plaintiff does not produce any medical expert testimony or any medical evidence to support his claim. It is further not apparent based on the available evidence that the medical facts would be observable to a lay person.

breached that duty, a resulting injury, or a proximate cause between an injury and breach. The evidence shows Nurse Kostelecky found verification of Plaintiff's prescription medications the appropriate medical response to his medical history and vital signs, and that two other medical providers who saw Plaintiff on the following day reached the same or substantially similar conclusions regarding his condition and the proper course of treatment. Plaintiff disagrees with this course of action, but does not describe or provide evidence showing Nurse Kostelecky failed to provide competent medical care. Further, there is no evidence supporting Plaintiff's allegation he suffered near death, heart attack, or stroke, or that his life was in peril, and no evidence he required or even sought medical treatment after his release. Given the absence of evidence supporting a claim of negligence, Nurse Kostelecky is also entitled to summary judgment in relation to any such claim.

## CONCLUSION

For the reasons set forth above, Defendant Kostelecky's Motion for Summary Judgment on Plaintiff's Claims, Dkt. 28, should be GRANTED, and Plaintiff's claims against Nurse Kostelecky should be DISMISSED with prejudice.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will

///

be ready for consideration by the District Judge on **March 4, 2022**.

Dated this 16th day of February, 2022.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11